IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SANDRA SMITH,

        Plaintiff,

v.                                              CIVIL ACTION NO. 2:16–cv–11817

C. R. BARD, INC.,

        Defendant.

MEMORANDUM OPINION AND ORDER
(*Daubert* Motion re: Bruce Rosenzweig, M.D.)

Pending before the court is the Motion to Exclude or Limit Certain Opinions and Testimony of Bruce Rosenzweig, M.D. [ECF No. 30] filed by defendant C. R. Bard, Inc. ("Bard") on September 29, 2017. The plaintiff has responded to the Motion [ECF No. 33], and Bard has replied [ECF No. 35]. The Motion is now ripe for consideration because briefing is complete.

I.     BACKGROUND

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation ("MDL") concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 24,000 cases currently pending, approximately 3,000 of which are in the C. R. Bard, Inc. MDL, MDL No. 2187.

In an effort to manage the massive Bard MDL efficiently and effectively, the court decided to conduct pretrial discovery and motions practice on an individualized

basis. To this end, I ordered the plaintiffs and defendants to submit a joint list of remaining cases in the Bard MDL, MDL 2187, with claims against Bard and other defendants where counsel has at least twenty cases in the Bard MDL. The list included nearly 3000 cases. From these cases, I selected 332 cases to become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order No. 244, *In re C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10–md–02187, Mar. 3, 2017, https://www.wvsd.uscourts.gov/MDL/2187/orders.html. Upon the creation of a wave, a docket control order subjects each active case in the wave to the same scheduling deadlines, rules regarding motion practice, and limitations on discovery. I selected the instant civil action as a Wave 5 case.

## II.  LEGAL STANDARD

By now, the parties should be intimately familiar with Rule 702 of the Federal Rules of Evidence and *Daubert*, so the court will not linger for long on these standards.

Expert testimony is admissible if the expert is qualified and if his or her expert testimony is reliable and relevant. Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 597. An expert may be qualified to offer expert testimony based on his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Reliability may turn on the consideration of several factors:

> (1) whether a theory or technique can be or has been tested;
> (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or

>   technique enjoys general acceptance within a relevant scientific community.

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592–94). But these factors are neither necessary to nor determinative of reliability in all cases; the inquiry is flexible and puts "principles and methodology" above conclusions and outcomes. *Daubert*, 509 U.S. at 595; *see also Kumho Tire Co. v. Carmichael*, 525 U.S. 137, 141, 150 (1999). Finally, and simply, relevance turns on whether the expert testimony relates to any issues in the case. *See, e.g., Daubert*, 509 U.S. at 591–92 (discussing relevance and helpfulness).

In the context of specific causation expert opinions, the Fourth Circuit has held that "a reliable differential diagnosis provides a valid foundation for an expert opinion." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 263 (4th Cir. 1999).

>   A reliable differential diagnosis typically, though not invariably, is performed after 'physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests,' and generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.

*Id.* at 262 (citations omitted). "A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation." *Id.* at 265. However, an expert's causation opinions will not be excluded "because he or she has failed to rule out every possible alternative cause of a plaintiff's illness." *Id.* "The alternative causes suggested by a defendant 'affect the weight that the jury should give the expert's testimony and not the

3

admissibility of that testimony,' unless the expert can offer '*no* explanation for why she has concluded [an alternative cause offered by the opposing party] was not the sole cause.'" *Id.* at 265 (citations omitted).

At bottom, the court has broad discretion to determine whether expert testimony should be admitted or excluded. *Cooper*, 259 F.3d at 200.

### III. DISCUSSION

#### A. Specific Causation

Bard first argues that Dr. Rosenzweig's specific causation opinions pertaining to the alleged injuries are unreliable because he did not personally examine the plaintiff or consider her complicated medical history sincerely. I disagree. Dr. Rosenzweig explained in his expert report and during his deposition his reasons for inferring from the plaintiff's medical records the issue of specific causation. *See, e.g.*, Bard's Mot. to Exclude or Limit Certain Ops. & Test. of Bruce A. Rosenzweig, M.D., Ex. A (Rosenzweig Report), at 7-9 [ECF No. 30-1]; Bard's Mot. to Exclude or Limit Certain Ops. & Test. of Bruce A. Rosenzweig, M.D., Ex. B (Rosenzweig Dep.), at 131:17-143:14 [ECF No. 31-2]. If Bard wishes to challenge the soundness of this inference, it may do so by offering competing testimony or through cross-examination. Therefore, Bard's motion on this point is **DENIED**.

#### B. Opinions Related to Degradation, Contraction, and Deformation

Bard also argues that Dr. Rosenzweig's specific causation opinions pertaining to the purported degradation, contraction, and deformation of the mesh product are unreliable because he did not personally examine the removed mesh or any pathology

materials regarding the mesh in forming his opinion. However, Dr. Rosenzweig explained during his deposition his reasons for inferring from the plaintiff's medical records the occurrence of degradation. Rosenzweig Dep. 154:9-155:7; 167:17-168:18. If Bard wishes to challenge the soundness of this inference, it may do so by offering competing testimony or through cross-examination. Therefore, Bard's motion on this point is **DENIED**.

### C. Safer Alternative Design

Next, Bard objects to testimony relating to general causation—specifically, Dr. Rosenzweig's opinions related to a safer alternative design. Any general causation issues properly raised in a motion to exclude general causation testimony were addressed in my earlier order on January 23, 2018 Order [ECF No. 5104], *In re Bard, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10–md–02187. Bard's Motion on this point is **DENIED**, and any remaining issues are **RESERVED** for trial.

### IV. CONCLUSION

The court **ORDERS** that the Motion to Exclude or Limit Certain Opinions and Testimony of Bruce Rosenzweig, M.D. [ECF No. 30] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:  February 5, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

5